IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

J.W. PETERS, INC., )
 )
            Plaintiff, )
 )
    v. )
 )  Nos. 04 C 6542
 )        04 C 8292
INTERNATIONAL ASSOCIATION OF BRICK, )  05 C 309
STRUCTURAL, ORNAMENTAL AND )
REINFORCING IRON WORKERS, )
LOCAL UNION #1, et al., )
 )
            Defendants. )

## MEMORANDUM OPINION AND ORDER

Attorney Lawrence J. Weiner ("Weiner") has filed what he captions as an "Amended Motion for Recusal Under 28 U.S.C. §144 with Accompanying Affidavit and Certification" (the "Motion") on behalf of plaintiff J.W. Peters, Inc. ("Peters"). This is the most recent of Weiner's efforts at judge-shopping--this time a more direct effort, via his attempted resort to 28 U.S.C. §144 ("Section 144"), than his first attempt (of which more later). But the current motion must be denied for several reasons, and this Court so orders.

Before this opinion turns to other substantive flaws in Weiner's motion, there are two fatal defects in his attempt to invoke Section 144, both plainly set out in a case from our Court of Appeals with which Weiner is concededly aware (United States v. Sykes, 7 F.3d 1331 (7th Cir. 1993))--indeed, that is the first case that Weiner himself cites in purported support of his motion

(Motion ¶8). Here is the first principle announced in <u>Sykes</u>, <u>id</u>. at 1339 (citations and internal quotation marks omitted), a holding that Weiner unquestionably flunks:

> The affidavit also must show that the bias is personal rather than judicial, and that it stems from an extrajudicial source--some source other than what the judge has learned through participation in the case. Because the statute is heavily weighed in favor of recusal, its requirements are to be strictly construed to prevent abuse.[1]

And the second set of principles, set out here at length to avoid any prospect of incomplete presentation, reads this way (<u>id</u>. at 1339-40):

> Moreover, the averments in Sykes' affidavit focused more on the district court's alleged bias against her counsel and his law firm than against Sykes herself. Indeed, Sykes acknowledges that she repeatedly "expressed her belief to counsel and others[ ] that the Trial Judge was prejudiced against her as expressed in the Court's statements about opinions expressed by members of the law firm of her counsel." (R. 16 ¶3.) The prejudice alleged is therefore derivative of a purported bias against counsel and his law firm. Although we have not yet considered the question, other circuits have held that bias against counsel alone is insufficient because "section 144 makes clear on its face[ ] that '[a]ntipathy to an attorney is insufficient grounds for disqualification of a judge because it is not indicative of extrajudicial bias against a "party."'" <u>Souder v. Owens-Corning Fiberglas Corp.</u>, 939 F.2d 647, 653 (8th Cir. 1991)(quoting <u>Gilbert v. City of Little Rock</u>, 722 F.2d 1390, 1398 (8th Cir. 1983), <u>cert</u>. <u>denied</u>, 466 U.S. 972, 104 S.Ct. 2347, 80 L.Ed.2d 820 (1984)); <u>see</u> <u>also</u> <u>Hinman v.</u>

---

[1] [Footnote by this Court] As Weiner's presentation (otherwise flawed though it is) shows squarely, this Court's criticism of his judge-shopping tactic stemmed from no extrajudicial source whatever: It was derived solely from what this Court learned through its participation in the four <u>Peters</u> cases.

2

Rogers, 831 F.2d 937, 939 (10th Cir. 1987). Souder acknowledged, however, that in some circumstances, "bias against an attorney can reasonably be imputed to a party" (939 F.2d at 653), and we agree. But the party seeking recusal on that theory must allege facts suggesting that the alleged bias against counsel might extend to the party. Id. at 653 n. 6; see also United States v. Jacobs, 855 F.2d 652, 656 n.2 (9th Cir. 1988) (facts must suggest such a "virulent personal bias or prejudice against the attorney as to amount to a bias against the party"); United States v. Burt, 765 F.2d 1364, 1368 (9th Cir. 1985). The allegations to that effect here are merely conclusory and insufficient to require recusal under section 144.

That language could well have been written for this case. If this Court did possess (as it does not) a personal bias or prejudice against Weiner himself (something that it has taken pains to scotch, for its admittedly sharp criticism of his tactics in this instance in no way reflects such a mindset toward Weiner as such), all that the current motion proffers (immediately before its inexplicable citation to Sykes) is the unsupported ipse dixit that this Court's view of Weiner "must under the circumstances be imputed to his client" and, equally without support, "since all of the Plaintiff's attorneys of record concurred in the decision to file the Stipulation of Voluntary Dismissal, it is assumed that the Court's bias and prejudice extends to them as well." But any such attenuated conclusory statements ignore the direct and uncontroverted (indeed, uncontrovertible) facts:

1. As for Peters, this Court has no extrajudicial knowledge or information at all. It never heard of the

3

company before now-dismissed Case No. 04 C 2932 was assigned at random to its calendar, and nothing that this Court learned in the course of handling that lawsuit or during its minimal threshold involvement in the three pending cases has created any basis for bias or prejudice in either direction.

    2. As for the other members of the law firm to which Weiner is a comparatively recent addition, nothing could be further from the truth than any notion of adverse bias or prejudice. This Court explicitly made that clear at page 6 of the May 9, 2004 transcript that Weiner has attached to his motion, before it had any notion that Weiner would bring the present unfounded motion. It would of course be possible to elaborate on what was said on May 9, but it is scarcely necessary to expand on the extraordinarily high regard that this Court has for the law firm itself and for all of its other members whom this Court knows.

Nor is what has been said to this point merely technical in nature. Sykes, 7 F.3d at 1340 went on to say this immediately after the language quoted earlier:

> In any event, any prejudice here would presumably have been alleviated by the appointment of new counsel.

If that is true even in a criminal case, it should apply a fortiori in a civil case such as this one, where other members of the 40-some-person law firm to which Weiner belongs are available

4

to handle the cases (in fact, as Weiner points out, some of those others are of record now).[2] It would truly distort the system if an individual lawyer in a law firm could come into litigation and seek to bootstrap the case into a judicial recusal or disqualification because of some problem personal to that lawyer--that would impermissibly play fast and loose with the random assignment system of this District Court.

But having said all of this, this Court also believes that the record should not be allowed to remain in the inaccurate posture in which Weiner has sought to portray it. Before this opinion turns to that task, though, it seems worthwhile to explore briefly the difference between the federal anathema to such judge-shopping and the Illinois state court approach, which has always countenanced such efforts to a limited extent.

In the Illinois state court system, what the cases have long referred to as a "change of venue"--more precisely a "change of judge"--has undergone a material change over the years. Historically and for many years, the established doctrine was that a litigant could obtain such a change by the bare assertion of bias or prejudice, and the judge could not go behind that assertion to address whether it had any factual basis--instead a transfer occurred as a matter of right (unless the judge had

---

[2] Interestingly, Weiner himself was not among the original counsel in the first of the Peters cases, the now-dismissed Case No. 04 C 2932.

already made some substantive ruling that was held to make the motion for transfer untimely). That doctrine has evolved through several changes to its present reincarnation in 735 ILCS 5/2-1001, which now obviates any such need to employ the fiction of asserted bias where none exists in fact.

So the consequence in Illinois state court litigation has always been the existence of a limited right of judge-shopping. Not so in the federal system, where (as already stated) the required showing under Section 144 is one of personal bias or prejudice toward the <u>party</u> to the proceeding--in this instance Peters. But because Weiner has sought to reframe the issue in terms of a personal bias or prejudice against him, his effort to do so--even though insufficient in law--needs to be corrected.

There is no question that this Court was sharply critical of the action taken by Weiner as a matter of right in the now-dismissed Case No. 04 C 2932--not because of the perfectly proper dismissal of that case, but rather only because he sought to have that dismissal impact the three still-pending cases referred to in the caption here by triggering a change of judge. In that regard it is necessary to look at the transcripts of all of the proceedings in the matter, not just at the snippets quoted by Weiner or at the May 9 transcript attached to his motion.[3] Again

---

[3] This Court's court reporter advises that Weiner has ordered and obtained those other transcripts (except of course for that of May 20, which he has ordered and is in preparation), but he has not attached them to the motion.

6

what Weiner has not disclosed is that it was not at all the dismissal as of right of Case No. 04 C 2932 pursuant to Fed. R. Civ. P. 41(a)(1) that occasioned this Court's criticism, but rather the obvious fact that the only purpose of that move was that of judge-shopping--an effort to undo the reassignment of the three other pending cases to this Court's calendar, something that the Executive Committee had ordered four days before the voluntary dismissal. What is conspicuously absent from every filing by Weiner and from all of his oral statements is a single word of denial that such is the case, or a single word of explanation of any reason other than such judge-shopping for the voluntary dismissal of Case No. 04 C 2932 (without question that case and the three still-pending actions involved the identical legal issue, which was the occasion for their reassignment on grounds of relatedness to begin with).

This Court has neither ruled on that issue nor expressed any view on its merits, having simply announced that it properly plans to conduct any evidentiary hearings required to make the legal determination called for by our Court of Appeals' remand of the now-dismissed case.[4] Weiner's attempt to convert this Court's criticism of him into a proxy for a nonexistent bias or prejudice against Peters itself can only appear to reflect his

---

[4] It may be noted parenthetically that the Court of Appeals, in its remand, did not call for reassignment to another District Judge under Circuit Rule 36.

7

own prejudice in assuming an adverse result that this Court has neither reached nor even thought about.

As for this Court's view of Weiner himself, it has repeatedly made it clear that no such personal bias or prejudice against him exists--it is important to separate disapproval (even strong disapproval) of what a lawyer has done in an individual instance from the notion of personal bias or prejudice against that lawyer as such, something that this Court has been at pains to emphasize not only in the May 9 transcript but in each of the proceedings since then. If that distinction were not meaningful, the result would be that any sanction imposed for perceived inappropriate conduct on the part of a lawyer at any time (and it will be noted that this Court did not sanction Weiner) would automatically disqualify the judge from hearing any other case in which that lawyer later appeared--plainly not the law.

One final point should be made, relating to the institutional consideration referred to by this Court at the time of presentment of Weiner's most recent prior motion in these cases on May 20 (another transcript that should be reviewed to get a complete picture of the situation). This District Court properly prides itself on the integrity of its assignment system. If any litigant's lawyer could skew that system by the type of filing presented here, bending assignments to the lawyer's or his or her client's will, that would permit a kind of self-fulfilling

judge-shopping against which the randomness of our assignment system seeks to guard. This Court has no stake in the matter--whether or not it has one case (or three cases) more or less is of no import. What is of import is the institutional integrity of this District Court itself.

## Conclusion

This opinion has been far longer than this Court would have preferred--it might have been enough in legal terms to identify Weiner's deficiencies solely in Section 144 terms and leave it at that. But judges like lawyers are understandably sensitive to any suggestions of inappropriate conduct,[5] and this opinion's further extended discussion has focused on matters that cannot be viewed as solely technical in nature. For the reasons stated here, the Weiner-Peters motion is denied.

                    */s/ Milton I. Shadur*
                    Milton I. Shadur
                    Senior United States District Judge

Date: May 24, 2005

---

[5] This Court certainly does not fault Weiner for feeling wounded by its criticism of his conduct--something that has nothing to do with the fact that the criticism was warranted.

9